UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:  }
JONATHAN K. ANDERSON  }
  } Case No. 06-40856-JJR-13
Debtor.  }

## MEMORANDUM OPINION ON MOTION TO CONVERT

This matter came before the Court on the Motion to Convert (Doc. 81, and herein the "Motion") filed by Cathy Anderson, the Debtor's former wife and an unsecured creditor (the "Movant"). The Movant asked the Court to convert the Debtor's chapter 13 case to a case under chapter 7 of the Bankruptcy Code.[1] Although not stated in the Motion, such a conversion would be pursuant to Section 1307 of the Code. As grounds for her Motion, the Movant alleges the Debtor failed to account "for all his disposable income and assets."

The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); therefore, the Court has authority to enter a final order. In compliance with Rule 7052(a) of the Federal Rules of Bankruptcy Procedure, the following shall constitute the Court's findings of fact and conclusions of law.[2] For the reasons stated below, the Court is conditionally denying the relief sought in the Motion.

Based on the testimony of the Debtor, the trial exhibits, the Debtor's deposition and exhibits thereto, as well as the parties' stipulations, arguments of counsel, and the contents of the file

---

[1] 11 U.S.C. § 101 *et seq*, and herein the "Code." All "Section" references are to a section or subsection of the Code.

[2] All "Rule" references are to the Federal Rules of Bankruptcy Procedure.

maintained by the Court with respect to this case, including the Debtor's petition, schedules and statement of financial affairs, the Court finds that the Debtor's income reported in his Schedule I (form B61), Statement of Current Monthly Income (form B22C), and Statement of Financial Affairs (form 7), was materially understated. Specifically, the Debtor failed to report prepetition commissions (referred to by the Debtor as a "sale spiff") received on a recurring basis from Bombardier or Yamaha that he earned from sales of their products by the Debtor's family-owned business. Moreover, the Debtor failed to report periodic distributions received from his family's business, which the Debtor referred to as return of "prepaid capital." These distributions may have been more in the nature of dividends, but that is not relevant with respect to the issues now before the Court.

The Debtor defended his failure to disclose his commissions and distributions by showing that at least the commissions were reported on his income tax returns furnished to the Chapter 13 Trustee when the original petition was filed. The Debtor had an unqualified duty to file accurate and complete schedules, and when they were signed, the Debtor vouched for their accuracy under penalty of perjury. The Trustee had no duty to go behind the Debtor and make sure there was no discrepancy between the income reported on the schedules and that reported to IRS on tax returns.

Earlier this year, this Court stated the following with regard to a debtor's duty to file accurate schedules:

> Honesty and full disclosure are absolutely required for bankruptcy jurisprudence to function and have credibility among its participants and the public. Full disclosure in any bankruptcy case begins with accurate schedules, including a description of all the debtor's assets. Schedules are signed by debtors under penalty of perjury, and counsel signs bankruptcy petitions under the implicit representations of Rule 9011(b). The gauge for measuring the accuracy of bankruptcy schedules is not calibrated with the same tepid standard applicable to averments in a civil action

2

Case 06-40856-JJR13    Doc 93    Filed 04/15/09    Entered 04/15/09 16:00:34    Desc Main
Document      Page 2 of 6

complaint. Rather, bankruptcy schedules are representations of hard facts about which there should be little or no equivocation, and to the extent there is uncertainty, it should be explained. While the value assigned to an asset may be subject to a more forgiving standard because value is often based on opinion, the disclosure and identification of an asset are absolute, with no room for unexplained ambivalence. The Code and Rules mandate a debtor schedule *all* property, *wherever* located and by *whomever* held, in which he has a legal or equitable interest. Section 541(a); Rule 1007. The disclosure of assets is subject to a simple binary formula: the debtor either (1) owns an interest in an asset or (2) he does not; and the former requires disclosure. "[T]here is no 'Oops' defense to the concealment of assets and ... [such] facts establish a 'bad faith' case." *Marrama v. Citicens Bank of Mass.*, 549 U.S. 365, 370 (2007) (confirming bankruptcy court's refusal to allow chapter 7 debtor to convert to chapter 13 because of debtor's misleading schedule of assets).

*In re Bishop*, 2009 WL 348844 at 3 (Bankr. N.D. Ala., Feb. 6, 2009).

In this case, the Debtor's duty to accurately disclose his income from all sources was the same as the debtor's duty in *Bishop* to accurately disclose his assets.

On his Schedule B - Personal Property, the Debtor listed a 1995 Chevrolet Corvette valued at $10,000. The Debtor sold the Corvette postpetition and failed to amend his schedules or otherwise disclose to the Court or the Trustee that he had received $10,000 as additional disposable income from the sale of the Corvette. The Debtor used most of these sale proceeds for a family vacation and to purchase a large, flat-screen TV, and he used the remainder for repairs to automobiles owned by his father and wife (the Debtor remarried) and for other miscellaneous expenses.

The Confirmation Order stated: "Property of the Estate - '[T]he plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan.' *In re Telfair*, 216 F.3d 1333 (11th Cir. 2000) (quoting *In re Heath*, 115 F.3d at 524, 7th Cir. 1997)."[3] The Debtor argues the Corvette, and hence its sale proceeds, were not property of his

---

[3] In light of the Eleventh Circuit's recent decision in *Waldron v. Brown (In re Waldron)*, 536 F.3d 1239 (11th Cir. 2008), chapter 13 plan confirmation orders now entered by this Court no longer contain the above quote from *In re Telfair*.

3

Case 06-40856-JJR13   Doc 93   Filed 04/15/09   Entered 04/15/09 16:00:34   Desc Main
Document      Page 3 of 6

bankruptcy estate and he was entitled to utilize the proceeds as he wished without any disclosure to the Trustee or the Court. The Debtor testified he did not use the Corvette for day-to-day transportation, but rather he relied on a vehicle supplied by his father for such transportation. Thus, the Corvette was not used by the Debtor to get back and forth to work, and was not otherwise used in his employment. The Corvette was not claimed as exempt property on Schedule C.

In *Waldron v. Brown (In re Waldron)*, 536 F.3d 1239 (11th Cir. 2008), the debtor argued the underinsured motorist benefits he received postpetition were not property of the estate. The bankruptcy and district courts disagreed with the debtor's argument and ruled the benefits were property of the estate. They found, based on Eleventh Circuit precedent, the debtor had a "continuing duty to disclose changes in his financial situation during the pendency of his bankruptcy." *Id.* at 1244. The Circuit Court affirmed the two lower courts.

No doubt the Debtor in this case would argue that, notwithstanding *Waldron*, the Court's confirmation order returned the Corvette to him, and its proceeds were likewise not property of the estate. Nonetheless, this Court will not decide if the Debtor had a duty to disclose his receipt of the Corvette sale proceeds based on whether they were property of the estate. Rather, the Court finds that such proceeds were unquestionably additional disposable income which the Debtor had a duty to disclose by amending his schedules. *In re Baxter*, 374 B.R. 292 (Bankr. M.D. Ala. 2007) (finding that although lawsuit proceeds were not property of the estate, they were additional disposable income warranting modification of debtors' plan). *See also In re Gardner*, 344 B.R. 663, 667 (Bankr. M.D. Fla. 2006) ("A debtor who comes to the bankruptcy court must come clean, make full disclosure of all information relevant to the administration, and must fully cooperate with the trustee. . . . It is not for the debtor to decide what is and is not relevant. A debtor who intentionally omits

important information and fails to make full disclosure to the court, places the right to the discharge in serious jeopardy. The veracity of a debtor's Statement is absolutely essential to the successful administration of the Bankruptcy Code.").

The Debtor had a duty to disclose all his income in his original schedules and a continuing duty to disclose changes in his financial situation during the pendency of his case. He did neither. Nonetheless, the Court finds that rather than a conversion of this case to chapter 7, the estate, and in particular the creditors, will benefit more if the Debtor is required to amend his schedules and disclose all prepetition income received from commissions and distributions, as well as the postpetition receipt of the proceeds received from the sale of the Corvette. Thus pursuant to Rule 1009, the Debtor will be ordered to amend his schedules and make the foregoing disclosures within 14 days from the entry of this Order.

It is anticipated that after the Debtor amends his schedules as required above, a party in interest, including the Debtor, the Movant or the Trustee, will move to modify the Debtor's confirmed plan pursuant to Code Section 1329(a)(1) and seek an increase in the amount of plan payments.[4] If no such motion is filed within 30 days after the Debtor files amended schedules, or if the Debtor fails to timely amend his schedules, the Movant may renew her Motion, and the Debtor's case will be converted to a chapter 7 case or dismissed.

---

[4] Inasmuch as the Debtor represented under penalty of perjury in his Schedule J and confirmed plan that he was capable of making a $411.69 monthly payment based on income that did not include his commissions, distributions and Corvette proceeds, the Court anticipates that whomever moves to modify the Debtor's plan will argue that the payments should be increase by an amount that will distribute all commissions and distributions, plus the $10,000 sales proceeds over the remaining term of the plan, and that the Debtor should be estopped to argue otherwise.

5

Accordingly, a separate order consistent with this ruling will be entered denying the relief sought in the Motion without prejudice and providing the Movant with the right to renew her Motion upon the conditions stated above.

Dated: April 15, 2009

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

6